IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HARTFORD COMPUTER HARDWARE, INC., *et al.*,[1] | ) ) | Case No. 11-49744 (PSH) (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Pamela S. Hollis |

**NOTICE OF FIRST AND FINAL APPLICATION OF PARAGON CAPITAL PARTNERS, LLC, AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES**

PLEASE TAKE NOTICE that on April 5, 2012 at 10:00 a.m., I shall appear before the Honorable Pamela S. Hollis, Bankruptcy Judge, in Courtroom 644, Dirksen Federal Courthouse, 219 South Dearborn Street, Chicago, Illinois or before any other Bankruptcy Judge who may be sitting in her place and shall present and request an immediate hearing on the First and Final Application of Paragon Capital Partners, LLC, as Financial Advisor and Investment Banker to the Debtors, for Allowance of Compensation and Reimbursement of Expenses, a copy of which is attached hereto and is herewith served upon you.

Dated: March 14, 2012                                 Respectfully submitted,

By: /s/ John P. Sieger
John P. Sieger (ARDC No. 6240033)
Peter A. Siddiqui (ARDC No. 6278445)
Paige E. Barr (ARDC No. 6282474)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
John.Sieger@kattenlaw.com
Peter.Siddiqui@kattenlaw.com
Paige.Barr@kattenlaw.com
*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors are Hartford Computer Hardware, Inc. (FEIN 27-4297525), Nexicore Services, LLC (FEIN 03-0489686), Hartford Computer Group, Inc. (FEIN 36-2973523), and Hartford Computer Government, Inc (FEIN 20-0845960).

1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| HARTFORD COMPUTER HARDWARE, ) | Case No. 11-49744 (PSH) |
| INC., *et al.*,[1] ) | (Jointly Administered) |
| ) | |
| Debtors. ) | Hon. Pamela S. Hollis |

**FIRST AND FINAL APPLICATION OF PARAGON CAPITAL PARTNERS, LLC, AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

| | |
|---|---|
| Name of Applicant: | Paragon Capital Partners, LLC |
| Authorized to Provide Professional Services to: | Hartford Computer Hardware, Inc., Nexicore Services, LLC, Hartford Computer Group, Inc. and Hartford Computer Government, Inc. |
| Date of Retention: | January 26, 2012 *nunc pro tunc* to December 12, 2011 |
| Period for which Compensation and Reimbursement is sought: | December 12, 2011 to Sale Closing |
| Amount of Compensation sought as actual, reasonable and necessary: | $1,812,159.00 |

---

[1] The Debtors are Hartford Computer Hardware, Inc. (FEIN 27-4297525), Nexicore Services, LLC (FEIN 03-0489686), Hartford Computer Group, Inc. (FEIN 36-2973523), and Hartford Computer Government, Inc (FEIN 20-0845960).

1

| | |
|---|---|
| Amount of Expense Reimbursement sought: | $8,117.06 |
| Prior Interim Applications: | None. |
| Amounts Previously Paid: | None. |
| This is a: | ___ monthly ____ interim _x_ final application. |

2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HARTFORD COMPUTER HARDWARE, INC., *et al.*,[1] | ) ) ) | Case No. 11-49744 (PSH) (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Pamela S. Hollis |

**FIRST AND FINAL APPLICATION OF PARAGON CAPITAL PARTNERS, LLC, AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Paragon Capital Partners, LLC (the "Applicant"), financial advisor and investment banker to the above-captioned debtors (the "Debtors") in these chapter 11 cases, hereby applies for allowance of compensation and reimbursement of expenses (this "Application") and respectfully represents as follows:

**INTRODUCTION**

1. Pursuant to the order entered by this Court for the retention of the Applicant by the Debtors, the Applicant seeks allowance of compensation for services it rendered to the Debtors, in the amount of $1,812,159.00 and reimbursement of expenses in the amount of $8,117.06 for the period from December 12, 2011 through the closing of the Sale (as defined below) of certain of the Debtors' assets (the "Application").

**BACKGROUND**

2. On December 12, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The petitions initiated bankruptcy

---

[1] The Debtors are Hartford Computer Hardware, Inc. (FEIN 27-4297525), Nexicore Services, LLC (FEIN 03-0489686), Hartford Computer Group, Inc. (FEIN 36-2973523), and Hartford Computer Government, Inc (FEIN 20-0845960).

cases: *In re Hartford Computer Hardware, Inc.* (Case No. 11-49744), *In re Hartford Computer Group, Inc.* (Case No. 11-49750), *In re Nexicore Services, LLC* (Case No. 11-49754) and *In re Hartford Computer Government, Inc.* (Case No. 11-49752) (collectively, these "<u>Chapter 11 Cases</u>"). These Chapter 11 Cases are being jointly administered under *In re Hartford Computer Hardware, Inc.* (Case No. 11-49744).

3. The Debtors operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 28, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to 11 U.S.C. § 1102(a)(1). No trustee or examiner has been appointed in these cases.

**A.     Retention of the Applicant.**

5. Prior to the commencement of these chapter 11 cases, the Debtors retained the Applicant to provide financial advice and assistance in connection with evaluating and/or pursuing potential strategic and financial alternatives for the companies including a sale, debt financing, equity financing, or acquisition transaction. Since being engaged in June 2010, the Applicant has been actively involved in assisting the Debtors' management team in preparing and analyzing extensive information, preparing a comprehensive descriptive information memorandum, conducting a sale process, conducting extensive meetings with interested parties, facilitating detailed due diligence, and conducting negotiations with the various parties of interest.

6. The Debtors, with the assistance of the Applicant, actively marketed their businesses since late January 2011, focusing on a sale of substantially all of their assets as a going concern. The Debtors and the Applicant conducted a well-orchestrated sale process

2

targeting the companies' universe of potential strategic and financial buyers in an effort to maximize the value of their business assets as a going concern.

7. On or around the Petition Date, the Debtors entered into an agreement for the sale (the "Sale") of substantially all of the assets of Hartford Computer Group, Inc. ("HCG") and Nexicore Services, LLC ("Nexicore") to Avnet, Inc. and Avnet International (Canada) Ltd (collectively, the "Purchaser").

8. On the Petition Date, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006 for (I) Entry of an Order (A) Approving Bidding Procedures; (B) Granting Certain Bid Protections; (C) Approving Form and Manner of Sale Notices; (D) Setting Sale Hearing Date in Connection With Sale of Substantially All of Debtors' Assets; and (II) Entry of an Order (A) Approving the Sale of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption And Assignment of Certain Executory Contracts and Unexpired Leases; (C) the Assumption of Certain Liabilities; and (D) Granting Certain Related Relief (the "Sale Motion").

9. The Debtors also filed their Application for Order Authorizing the Retention and Employment of Applicant as Financial Advisor and Investment Banker to the Debtors in these Chapter 11 Cases, *nunc pro tunc* to December 12, 2011 [Doc. No. 28] (the "Retention Application") on the Petition Date. On January 26, 2012, this Court entered an order approving the Retention Application [Doc. No. 132] (the "Retention Order").

10. Pursuant to the Retention Order, the Debtors employed the Applicant to continue assisting them with the sale of their business assets as a going concern in these Chapter 11 Cases through a sale under 11 U.S.C. § 363. The Applicant deployed significant resources in connection with these Cases, working intensely with a dedicated team of professionals focused

3

on helping the Debtors maximize value. Paragon provided extensive investment banking services and support to the Debtors, working in close coordination with the Debtors' management team and legal professionals, and communicating consistently throughout the process about key activities, communications and interactions with potential buyers. Following the Petition Date, the Applicant promptly reached out to 81 of the 91 companies contacted in the pre-petition process in regard to the assets of HCG and Nexicore (the "Acquired Assets"). In addition, the Applicant reached out to approximately 70 additional companies, including approximately 41 operating companies and approximately 29 private equity firms. In essence, the Applicant reached out to the companies that it and/or the Debtors deemed to be the appropriate universe of potential strategic and financial acquirers, as well as a broad group of additional companies that Paragon and/or the Debtors could liberally conceive of having a potential strategic rationale for purchasing the Acquired Assets.

11. Paragon actively pursued and engaged with potential buyers to solicit interest, and provided extensive information to interested parties. In total, in the pre-petition and post-petition processes, the Applicant reached out to approximately 161 companies in the following sectors: Aftermarket Services; Electronics Retailers; EMS, Contract and Supply Chain Services; Hardware / Electronics OEMs; Hardware / Technology Distributors; IT and Business Support Services; Support Software and Services; Telecom/Cable Service Providers; and Private Equity Firms involved in multiple sectors. The marketing of the Acquired Assets was thorough, extensive, and conducted in a high-quality manner.

12. At the conclusion of the bankruptcy sale process, the Purchaser's bid for the Acquired Assets was accepted and, on February 28, 2012, this Court entered an order approving

the Sale of the Acquired Assets to the Purchaser [Doc. No. 208] (the "Sale Order"). The Debtors anticipate closing the Sale transaction in March or April 2012 (the "Closing").

13.     As a result, the Debtors will no longer require the Applicant's services following the Closing and file this first and final request of the Applicant for compensation earned and reimbursement of expenses incurred during these Chapter 11 Cases.

**B.     Terms of the Retention Order And the Fees and Expenses Incurred In Accordance Therewith.**

14.     Pursuant to the Retention Order, the Applicant is entitled to the following categories of compensation for its services to the Debtors during these Chapter 11 Cases: Monthly Work Fees, Sale Fee, Counsel Fees and Restructuring Advisory Fees (collectively, the "Fees"). The Applicant is also entitled to reimbursement of its expenses incurred therewith.

15.     The Fees payable to the Applicant are only subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and are not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

16.     Each of these categories are detailed below.

   (i)     Monthly Work Fee.

17.     The Applicant is entitled to payment of $20,000 per month for its services to the Debtors (the "Monthly Work Fee"). The Applicant was required to keep time records for its Monthly Work Fee in one-hour increments describing their daily activities and the identity of persons who performed such tasks. The Applicant was not required to maintain its time records for its Monthly Work Fee on a "project category" basis. A copy of the time records kept by the Applicant for its Monthly Work Fee are attached hereto as Exhibit A.

18.     Prior to the Petition Date, the Applicant received a pre-payment for its Monthly Work Fee for December 2011 and January, February, and March 2012.

5

19. Accordingly, the Applicant is only requesting approval of its Monthly Work Fees it has received to date and is not requesting payment of any further Monthly Work Fee.

      (ii)    <u>Sale Fee</u>.

20. Immediately upon the Closing of the Sale, the Applicant is entitled to an additional fee equal to 3.5% of Aggregate Consideration (as defined below), subject to an Aggregate Minimum Fee (as defined below) for all Sales of $500,000 (the "<u>Sale Fee</u>").

21. "Aggregate Consideration" means the total amount of:

    (a) Cash and the fair market value (on the date of payment) of all other consideration paid or payable (including amounts paid into escrow) to the Debtors, the holders of the Debtors' senior or subordinated debt, or the Debtors' equity holders in connection with a Sale, including amounts paid or payable in respect of convertible securities, warrants, stock appreciation rights, options or similar rights; <u>provided</u>, <u>however</u>, that "aggregate consideration" shall not include (for any purpose whatsoever) the value of any net operating losses of the Debtors that are retained by the Debtors or any of their stockholders or affiliates in connection with any Sale; <u>plus</u>

    (b) the principal amount of all debt, capitalized leases, and/or other liabilities or obligations assumed by a buyer or buyers in connection with a Sale, other than current trade payables (within 90 days of invoice date) and accrued ordinary course operating expenses that are assumed by the buyer(s) or other transferee; <u>plus</u>

    (c) the aggregate dividends, other than normal quarterly cash dividends, or other distributions declared by the Debtors in connection with the Sale.

22. Notwithstanding the foregoing, for purposes of calculating Aggregate Consideration, the fair market value of the following types of payments ("<u>Deferred Consideration</u>") shall be determined based on the present value of the reasonable expected maximum amount of such payments using a 15 percent per annum discount rate (the "<u>Discount Rate</u>"):

    (a) The principal amount of deferred installments of purchase price or other consideration including, without limitation, promissory notes and any portion of the aggregate consideration held in escrow subject to closing; and

6

>> (b) Future payments that are contingent on the future earnings or operations of the Debtors (or in the case of a Sale, the underlying assets).

23. The Applicant was not required to keep time records related to its Sale Fee.

24. The Sale Fee shall be paid by the Debtors to the Applicant upon the Closing of the Sale; provided, however, that in the event the Aggregate Consideration includes Deferred Consideration, the Applicant shall have the right, in its sole discretion, to elect (at least 2 business days prior to the Sale closing date), to receive fees owed on such Deferred Consideration at the same time such Deferred Consideration is paid (rather than upon the closing date of the Sale), whereby neither the Discount Rate nor the amount of the Deferred Compensation would be utilized for the purpose of determining Aggregate Consideration for the purpose of determining any Sale Fee payable at the closing of a Sale.

25. The Applicant seeks allowance of its Sale Fee in the amount of $1,812,159. The Sale Fee was calculated in accordance with the Applicant's engagement agreement approved in the Retention Order (the "Approved Engagement Agreement"), based on Aggregate Consideration of $51,775,992 multiplied by 3.5%. Consistent with the terms set forth in the Approved Engagement Agreement, Aggregate Consideration is comprised of: (a) cash consideration to be paid by the Purchaser at Closing equal to $35,500,000.00 (subject to any working capital adjustments determined no later than three days prior to Closing (the "Working Capital Adjustment"); plus (b) Deferred Consideration equal to $16,275,992, determined in accordance with the Approved Engagement Letter by discounting future contingent consideration set forth in the Asset Purchase Agreement of $19,500,000 by the per annum Discount Rate of 15%. While the Approved Engagement Agreement also provides for Aggregate Consideration to include the aggregate amount of any distributions declared by the Debtors in connection with a Sale, the Applicant has informed the Debtors that it is willing to

7

waive fees due on such amounts in order to eliminate the need for parties involved in these Cases to review, at this time, the amounts and nature of any distributions that may have previously occurred, or which may occur post-Closing.

26. Pursuant to the Sale Order, the Working Capital Adjustment will be determined before April 3, 2012, the date this Application is scheduled to be heard before the Court. In the event the Working Capital Adjustment increases the Sale Fee requested by the Applicant herein, the Applicant will supplement this Application accordingly.

    (iii)    Expenses.

27. The Applicant is entitled to payment of its reasonable out-of-pocket expenses (other than any fees and expenses of the Applicant's counsel) incurred in connection with the Sale (the "Expenses").

28. The Applicant was permitted to be paid its Expenses on a monthly basis without application to the Court; provided, however, all such payments are subject to final approval by this Court.

29. During these Chapter 11 Cases, the Applicant expended the sum of $8,117.06 in Expenses for reasonable and necessary expenses in connection with its representation of the Debtors.

30. The Expenses arise from amounts expended by the Applicant on behalf of the Debtors and are detailed in the charts attached hereto as Exhibit B.

31. The Expenses are reasonable, economical, actual and necessary. The Expenses are those customarily charged to non-bankruptcy clients of the Applicant.

**RELIEF REQUESTED**

32. By this Application, the Applicant seeks an Order (i) granting final allowances and approval of its Fees and Expenses; (ii) payment of its Sale Fee in the amount of $1,812,159;

(iii) authorizing and directing the Debtors to pay to the Applicant the Sale Fee upon the Closing of the Sale and out of the proceeds of the Sale, and (iii) granting such other and further relief as this Court deems just and proper.

WHEREFORE, the Applicant respectfully requests allowance of its Fees and Expenses and payment of the Sale Fee to the Applicant.

Dated: March 14, 2012

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/ John P. Sieger
John P. Sieger (ARDC No. 6240033)
Peter A. Siddiqui (ARDC No. 6278445)
Paige E. Barr (ARDC No. 6282474)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
John.Sieger@kattenlaw.com
Peter.Siddiqui@kattenlaw.com
Paige.Barr@kattenlaw.com

*Counsel to the Debtors and Debtors in Possession*

9